**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SHANNON MICHELE COLE, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> JENILLE GARNER, *et al.*, <br><br> *Defendants.* | Civil Action No. 25-4239 (RDM) |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs, proceeding *pro se*, bring this suit against a host of Defendants alleging a wide range of illegal activity linked to Plaintiff Shannon Cole's November 2025 arrest for theft in Hamilton County, Tennessee. *See generally* Dkt. 1 (Compl.); Dkt. 1-2 at 7–8 (Shannon Cole Decl.). Five of those Defendants—themselves also proceeding *pro se*—have moved to dismiss for lack of personal jurisdiction and improper venue. *See* Dkts. 8, 15. Plaintiffs, for their part, have moved for an extension of time and for alternative service as to one other Defendant, *see* Dkt. 14, and have filed an affidavit seeking a default judgment against several additional Defendants whom Plaintiffs claim to have served, *see* Dkt. 17. For the reasons explained below, the Court will **GRANT** the motions to dismiss for lack of personal jurisdiction, **GRANT** in part and **DENY** in part the motion for extension/alternative service, and **DECLINE** to enter a default judgment because Plaintiffs have neither demonstrated that they have properly effected service nor established that the Court has personal jurisdiction over the allegedly defaulting Defendants.

## I.  BACKGROUND

Plaintiffs' pleadings are far from a model of clarity, but their allegations appear to result from a dispute between Shannon Cole and Jenille Garner, both residents of Tennessee. *See* Dkt.

1 at 51; Dkt. 1-1 at 4–9; Dkt. 1-8 at 1; Dkt. 15 at 1.  Jenille Garner was originally Shannon Cole's "closest friend [and] confidant," Dkt. 1 at 51 (Compl.), but their relationship soured following a landlord/tenant dispute concerning a property in Hixson, Tennessee that Jenille Garner and her husband Michael Garner had rented to Jay Escue and Julia Swanson—Shannon Cole's son-in-law and daughter.  *Id.* at 24 (Compl.); Dkt. 1-2 at 7 (Shannon Cole Decl.).  That disagreement resulted in civil litigation in Tennessee, in which Shannon Cole served as a witness for the tenants.  Dkt. 1 at 20 (Compl.).  Plaintiffs allege that, in retaliation for her testimony, the Garners and the other Defendants orchestrated Shannon Cole's arrest "for the explicit purpose of removing, intimidating, or silencing her as a witness in that civil lawsuit."  *Id.*

The specific impetus for that arrest resulted from an unrelated quarrel between Shannon Cole and her neighbors Edgar "Buddy" Johnson III, Sherry Johnson, and Edgar Johnson IV.  The Johnsons owned a black "doodle-type" dog named "Lala," and Shannon Cole believed that they were neglecting the dog by leaving her outdoors without shelter, food, or supervision for long periods of time.  Dkt. 1-2 at 6 (Shannon Cole Decl.); Dkt. 1 at 50 (Compl.).  After Lala escaped from the Johnsons' house and was found in the Cole family's garage, Shannon Cole declined to return the dog to the Johnsons and attempted (ultimately unsuccessfully) to locate another family to adopt her while concealing the dog from the Johnsons (who had reported Lala as stolen).  Dkt. 1-2 at 7 (Shannon Cole Decl.).  Jenille Garner, at the time still on good terms with the Plaintiffs, was aware of Shannon Cole's activities and the two communicated about various stratagems to deceive the Johnsons in a long-running text conversation.  *See generally* Dkt. 1-5.  After they fell out, however, Jenille Garner spoke with the Hamilton County Sheriff's Department, showed them the text thread, and told them that Shannon Cole was in possession of the dog.  Dkt. 1-1 at 4–8.  Plaintiffs allege that Jenille Garner contacted law enforcement "as a premeditated

distraction to conceal her own criminal activity" related to the landlord/tenant dispute, and that she misled the Sheriff's Deputies "through intentionally distorted narratives."  Dkt. 1 at 51 (Compl.).

Hamilton County Sheriff's Deputies went to Shannon Cole's house on November 24, 2025.  Dkt. 1-1 at 8.  They found Lala inside the residence (despite Shannon Cole's attempt to conceal the dog's identity by dyeing her fur to disguise distinctive white markings), took possession of the dog, and arrested Shannon Cole for theft.  *Id.* at 8–9.  Shannon Cole was transported to the Hamilton County Jail and Detention Center for processing and held in custody for approximately 11 hours before being released.  Dkt. 1-2 at 8 (Shannon Cole Decl.).  Her Tennessee criminal prosecution for the offense is, apparently, ongoing.  *See, e.g.*, Dkt. 20 at 2 (discussing a March 10, 2026, court appearance in Shannon Cole's criminal case).

Plaintiffs—Shannon Cole, her husband Tony Minh Cole, and her daughter Chloe Cole— then filed this civil suit in December 2025.  *See generally* Dkt. 1 (Compl).  They named as Defendants the Garners, the Johnsons, Matt McAdoo (an attorney who had represented the Garners in the landlord/tenant dispute), the Hamilton County Sheriff's Department, including Deputy "L. Brooks," the Hamilton County Detention Center, Carlos Bail Bonding (whose identity is not clear from the complaint, but who the Court presumes is a bail bondsman in Tennessee), the Hamilton County General Sessions Court, Hamilton County General Sessions Judge Lila Statom (who, at least at one point, appears to have been presiding over Shannon Cole's criminal case), and fifty unnamed Doe Defendants.  *See id.* at 1–2 (Compl.).  Plaintiffs' precise claims and causes of action are difficult to parse, but they invoke a variety of constitutional and statutory provisions and recount the events leading up to Shannon Cole's arrest, her conditions of confinement when in custody, and her subsequent prosecution.  *See id.*

at 41–43 (Compl.).  They seek over $80 million in compensatory damages as well as injunctive

and declaratory relief related to Shannon Cole's ongoing criminal prosecution.  *Id.*

On January 12, 2026, Plaintiffs filed an affidavit representing that Shannon Cole had

effected service on all Defendants either by employing process servers or through certified mail.

Dkt. 12 at 1.  That same day, however, Plaintiffs also filed a motion seeking an extension of the

deadline to complete service on Defendant Matt McAdoo, after the certified mail sent to his

office's listed address was returned as undelivered by the United States Postal Service, which

indicated that there was no certified recipient at that address.  *See* Dkt. 14.  Plaintiffs requested

that the Court extend the deadline to serve McAdoo and/or authorize alternative service

"including service by email, publication, or service to his known private residence or clients."

*Id.* at 1.

The Garner and Johnson Defendants, proceeding *pro se*, filed motions to dismiss for lack

of personal jurisdiction and improper venue.  *See* Dkts. 8, 15.  The Court directed Plaintiffs to

respond to those motions, *see* Dkts. 9, 18, and Plaintiffs opposed the motions, *see* Dkts. 16, 19.

The Court also entered a minute order directing Plaintiffs to show cause why their complaint

should not be dismissed without prejudice for noncompliance with Federal Rule of Civil

Procedure 8, Min. Order (Jan. 16, 2026), which Plaintiffs (briefly) addressed in their opposition

to the Garners' motion to dismiss, *see* Dkt. 19 at 4.  While the motions to dismiss were being

briefed, Plaintiffs also filed a further affidavit representing that Shannon Cole had effected

service (via certified mail) on Carlos Bail Bonding and the Hamilton County governmental

Defendants and that the deadline for those Defendants to answer or otherwise respond to the

complaint had passed.  Dkt. 17 at 3.  Plaintiffs, accordingly, requested that the Court enter a

default judgment against those Defendants.  *Id.* at 1.

## II.  ANALYSIS

### A.    Personal Jurisdiction

The Court begins with the two pending motions to dismiss.  Both motions seek to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(2), which authorizes a defendant to move to dismiss a suit for lack of personal jurisdiction.[1]  Dkt. 8 at 1; Dkt. 15 at 1. To determine whether it may exercise personal jurisdiction over nonresident persons such as the Garners and Johnsons, the Court engages in a two-part inquiry.  *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).  First, the Court must determine whether it has personal jurisdiction by reference to the law of the forum state, here the District of Columbia.  *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995); *see Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 11 (2025) ("[F]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." (citation modified)).  Second, if the first step is satisfied, the Court must assess "whether a finding of jurisdiction satisfies the constitutional requirements of due process."  *GTE New Media Servs.*, 199 F.3d at 1347.  The plaintiff—who bears "the burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant," *Crane v. N.Y. Zoological Soc'y.*, 894 F.2d 454, 456 (D.C. Cir. 1990)—may carry that burden either by asserting general jurisdiction, "extend[ing] to any and all claims brought against a defendant," or specific jurisdiction, requiring that "[t]he plaintiff's claims . . . arise out of or relate to the defendant's contacts with the forum," *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–59 (2021) (citation modified).

---

[1] Because the Court will grant the Garner Defendants' and the Johnson Defendants' motions to dismiss for lack of personal jurisdiction, it need not address the alternative arguments raised in those motions.

5

Here, the Court can dispense with the discussion of D.C. law and proceed directly to the question of due process. Because the Garners and Johnsons represent (consistent with the complaint) that they are residents of Tennessee, Dkt. 8 at 1–2; Dkt. 15 at 1, and Plaintiffs do not contend otherwise, *see* Dkts. 16, 19, Plaintiffs' only available option is to demonstrate that the Garners or Johnsons are subject to the Court's specific personal jurisdiction, *see Fuld*, 606 U.S. at 12 ("General jurisdiction lies in the forum where the defendant is domiciled or fairly regarded as at home." (citation modified)). "Under the [D]ue [P]rocess [C]lause, specific personal jurisdiction exists if the plaintiff shows 'minimum contacts between the defendant and the forum establishing that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Adler v. Lloyd*, 496 F. Supp. 3d 269, 276 (D.D.C. 2020) (quoting *GTE New Media Servs.*, 199 F.3d at 1347)).

Plaintiffs have failed to carry their burden on either point. First, the complaint does not allege that any of the Garners or Johnsons have any connection to the District of Columbia whatsoever, let alone contacts amounting to "purposefully avail[ing] [themselves] of the privilege of conducting activities within the [District]." *Ford Motor Co.*, 592 U.S. at 359 (citation modified). Second, even if some of the Garners or Johnsons had engaged in some (unmentioned) activities within the District, there is no alleged "affiliation between the forum and the underlying controversy." *Id.* (citation modified). Plaintiffs' claims, which concern an arrest and criminal prosecution (in Tennessee) for the theft of a dog (in Tennessee), that is alleged to have been orchestrated in retaliation for Shannon Cole's testimony in civil litigation (in Tennessee) involving a landlord/tenant dispute (in Tennessee), has no discernable nexus to the District of Columbia.

6

Plaintiffs' oppositions to the motions to dismiss also fail to identify any qualifying link between the Garner and Johnson Defendants, the District of Columbia, and this litigation.  In their opposition to the Johnsons' motion to dismiss, Plaintiffs primarily argue that the Court may exercise nationwide personal jurisdiction over any Defendants under 18 U.S.C. § 1965 because Plaintiffs have alleged that Defendants are engaged in an enterprise under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964.  Dkt. 16 at 1–3.  But even assuming (simply for the sake of argument) that Plaintiffs have plausibly alleged the existence of a RICO enterprise and have otherwise satisfied the pleading requirements for bringing a claim under 18 U.S.C. § 1965, Plaintiffs' theory would still fail because section 1965(b)'s provision for nationwide service of process in RICO cases requires that the Court first "have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators."  *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1100 (D.C. Cir. 2008) (citation modified).  Although Plaintiffs assert that "one or more RICO defendants are properly before the Court," Dkt. 16 at 2, they fail to explain how any of the Tennessee-based Defendants named in their complaint are properly subject to the Court's personal jurisdiction.[2]  Nor have they attempted to demonstrate that no other federal district court—such as the United States District Court for the Eastern District of Tennessee, which covers the locations discussed in their complaint—could exercise personal jurisdiction over all of the Defendants.

---

[2] For similar reasons, Plaintiffs' references to conspiracy jurisdiction are unavailing.  Plaintiffs have not established that any purported member of their alleged conspiracy has engaged in any case-related activities in the District of Columbia.

In Plaintiffs' second opposition to the motions to dismiss, they do assert in a conclusory fashion that Defendants have "minimum contacts" with the District and that their conduct has created a "substantial connection" with the District.  Dkt. 19 at 2.  But Plaintiffs do not identify what those purported forum-related contacts are or offer any basis for the Court to credit their unsupported, conclusory assertions.  Plaintiffs' brief might perhaps be read as suggesting that the Court has personal jurisdiction over the Defendants because their conduct allegedly has affected Plaintiffs' "federal rights."  *Id.*  But even accepting that generous reading of their brief, the fact that Plaintiffs have alleged that this case involves "the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, concerns this Court's *subject matter* jurisdiction, not its *personal* jurisdiction over Defendants.  The fact that Plaintiffs may be entitled to have their case heard in federal court rather than state court does not empower them to force Defendants to litigate the matter in the District of Columbia, rather than in federal court in Tennessee or another qualifying forum.

The Court will therefore grant the Garners' and Johnsons' motions to dismiss for lack of personal jurisdiction.

## B.    Service

The Court next considers the pending service-related requests.  First, the Court will decline to enter Plaintiffs' requested default judgment against Carlos Bail Bonding and the Hamilton County governmental Defendants (the Hamilton County Sheriff's Department and its employees, the Hamilton County Detention Center, the Hamilton County General Sessions Court, and Judge Lila Statom).  *See* Dkt. 17.  As far as the Court can discern, Plaintiffs have not served these Defendants in compliance with Federal Rule of Civil Procedure 4, which authorizes "[a]ny person who is at least 18 years old *and not a party* [to] serve a summons and complaint." Fed. R. Civ. P. 4(c)(2) (emphasis added).  Plaintiffs' filings, however, suggest that Shannon Cole

herself—a party to this litigation—served the Defendants at issue via certified mail, which is not permitted by Rule 4.  Dkt. 12 at 1; Dkt. 17 at 3; *see Johnson-Richardson v. Univ. of Phoenix*, 334 F.R.D. 349, 357 (D.D.C. 2020) ("[Rule 4] does not permit a party . . . to personally serve a summons and complaint, even if the party is permitted to do so under the relevant state law.").

Moreover, even if Plaintiffs do succeed in effecting service on these Defendants in compliance with Rule 4, the Court may not enter a default judgment against a party who fails to appear until the Court first "satisf[ies] itself that it has personal jurisdiction . . . [over] an absent defendant."  *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005).  For similar reasons to those discussed above, the complaint offers no grounds for the Court to conclude that any of the Defendants at issue—all of whom are located in Tennessee—have any contacts with the District of Columbia, or that Plaintiffs' claims "arise out of or relate to" any such contact.  *Ford Motor Co.*, 592 U.S. at 359 (citation modified).

The Court will also deny Plaintiffs' request to authorize alternative service of Defendant Matt McAdoo.  *See* Dkt. 14.  The Court is unpersuaded that Plaintiffs' solitary (unsuccessful) effort to serve McAdoo via certified mail (which, in any event, appears to have been noncompliant with Rule 4 for the same reasons as Plaintiffs' other attempts to effect service by certified mail) justifies resort to alternative methods of service at this time.[3]  Plaintiffs have not established that they have made diligent efforts to serve McAdoo in compliance with Rule 4, or

---

[3] At times, Plaintiffs have also requested that the Court direct the U.S. Marshals to effect service on Defendants.  *See, e.g.*, Dkt. 19 at 3.  The Court declines to do so.  Plaintiffs are not proceeding *in forma pauperis*, and their conclusory and speculative assertions that they face unspecified safety risks in effecting service on some/all of the Defendants are insufficient to relieve Plaintiffs of their obligation to serve Defendants in compliance with Rule 4.  *See* Fed. R. Civ. P. 4(c)(3).  That is particularly so where, as here, the Court has serious doubts as to whether Plaintiffs' complaint states a plausible claim to relief, and where the basis for the Court's personal jurisdiction over the Defendants is unclear.

that D.C. or Tennessee law authorizes their suggested alternative methods of service.  *See* Fed. R. Civ. P. 4(e)(1) (authorizing service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made").

The Court will, however, grant Plaintiffs' request for an extension of time to effect service on Matt McAdoo, as well as the other Defendants whom Plaintiffs have failed to serve in compliance with Rule 4.  The Court will allow Plaintiffs until July 6, 2026, to file proof of service.

Finally, Plaintiffs' opposition to the Garners' motion to dismiss, which is captioned as a "Supplemental Clarification in Response to Defendants' Motion to Dismiss," Dkt. 19 at 1, invites the Court to consider that filing "as either an interpretive memorandum or a permissible amendment under Fed. R. Civ. P. 15(a)(2)," *id.* at 4.  The Court will not construe Plaintiffs' "Supplemental Clarification" as an amended complaint.  To the extent that Plaintiffs do seek to amend their complaint, they, like other *pro se* litigants, must comply with the Federal Rules of Civil Procedure and the Court's local rules and standing order.  *See Jarell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987).  Accordingly, if Plaintiffs do move to amend their complaint, they must comply with Rule 10 (which requires stating claims in numbered paragraphs), Rules 8 and 12(b)(6) (which require that a complaint state a claim upon which relief can be granted with sufficient clarity to place the defendants and the court on notice regarding the plaintiff's theory of relief), and with the Court's standing order (which requires that an amended pleading include a redline comparison between the original and amended filing).  *See* Dkt. 3 at 3.[4]

---

[4] Because this opinion solely deals with the pending motions related to service and personal jurisdiction, the Court does not decide whether Plaintiffs' current complaint merits dismissal

**CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED** that the Johnson Defendants' motion to dismiss, Dkt. 8, and the Garner Defendants' motion to dismiss, Dkt. 15, are **GRANTED**.  It is further **ORDERED** that Plaintiffs' motion for extension and for alternative service, Dkt. 14, is **GRANTED** in part and **DENIED** in part.  Plaintiffs shall file proof of service of all Defendants, in compliance with Rule 4, on or before July 6, 2026.  Failure to do so may result in the dismissal of the case for failure to prosecute.

　　　　**SO ORDERED**.

　　　　　　　　　　　　　　　　　　　　　/s/ Randolph D. Moss
　　　　　　　　　　　　　　　　　　　　　RANDOLPH D. MOSS
　　　　　　　　　　　　　　　　　　　　　United States District Judge


Date:  May 8, 2026

---

under Rule 8, *see* Min. Order (Jan. 16, 2026), or Rule 12(b)(6), or for failing to comply with Rule 10(b)'s requirement that that "a plaintiff break[] his or her complaint down into a series of discrete factual allegations" contained in numbered paragraphs, *Matthews v. McDonough*, No. 21-cv-1607, 2023 WL 4174319, at *1 (D.D.C. June 26, 2023) (collecting cases).  The Court notes, however, that it is far from clear that Plaintiffs' current complaint can withstand scrutiny under the governing rules.